

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-2006

# USA v. Boone

Precedential or Non-Precedential: Precedential

Docket No. 03-1520

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Boone" (2006). *2006 Decisions.* Paper 508.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/508

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1520

UNITED STATES OF AMERICA,

v.

KEVIN BOONE,

<u>Appellant</u>.

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 00-cr-00003)
District Court Judge: Honorable Jerome B. Simandle

Argued January 18, 2006
Before: FUENTES, BECKER,[*] and ROTH,[**] <u>Circuit Judges</u>.

(Filed August 21 , 2006)

---

[*] Judge Becker passed away on May 19, 2006, before the filing of the Opinion. The decision is filed by a quorum of the panel. <u>See</u> 28 U.S.C. § 46(d).

[**] Effective May 31, 2006, Judge Roth assumed senior status.

Peter Goldberger (ARGUED)
Pamela Wilk
Law Office of Peter Goldberger
50 Rittenhouse Place
Ardmore, PA 19003-2276

ATTORNEYS FOR APPELLANT

Christopher J. Christie
United States Attorney
George S. Leone
Chief, Appeals Division
970 Broad Street
Newark, NJ 07102

Norman J. Gross (ARGUED)
Assistant United States Attorney
Camden Federal Building & Courthouse
401 Market Street, 4th Floor
Camden, NJ 08033

ATTORNEYS FOR APPELLEE

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Kevin Boone appeals his conviction and sentence for distribution of cocaine. Boone asserts that the District Court improperly influenced the jury's deliberations when it delivered certain jury instructions and conducted an examination of a juror who had been accused by other jurors of refusing to deliberate properly. We conclude that the District Court did not abuse its discretion or commit plain error in its interactions with the jury.

However, because the District Court sentenced Boone under a mandatory sentencing guidelines scheme rather than under an advisory scheme, we vacate his sentence and remand for resentencing in accordance with the Supreme Court's opinion in United States v. Booker, 543 U.S. 220 (2005), and our opinion in United States v. Davis, 407 F.3d 162 (3d Cir. 2005) (en banc).

## I. BACKGROUND

Boone was indicted on five counts of distribution of cocaine, two counts of distribution of cocaine base, and one count of being a felon in possession of firearms. At trial, the government's case was based largely on the testimony of a confidential informant named Wendeline Thompson and an undercover officer name Julie Cash.[1] Thompson purchased cocaine and cocaine base from Boone, and then introduced Cash to Boone, telling Boone that Cash was a drug dealer named "Martresse." Boone sold both cocaine and cocaine base to "Martresse." The various conversations between Boone, Thompson, and Cash were recorded by the police, although some of the recordings were unintelligible. A search of four residences associated with Boone revealed drug-trafficking paraphernalia, cocaine, and two firearms.

Following a three-week trial and more than three days of deliberation, the jury convicted Boone as to one charge of distributing over 62 grams of cocaine, acquitted Boone on the gun possession charge and on two cocaine distribution charges, and hung as to the remaining drug charges. In February 2003, Boone was sentenced to 225 months in prison.

## A. Jury Deliberations

---

[1] Thompson had been arrested along with her husband for drug-related offenses, but the charges against her were dropped when her husband claimed ownership of the drugs. In an effort to obtain a lenient sentence for her husband, Thompson agreed to make controlled drug purchases from Boone.

3

During the first three days of deliberations, the jury sent several notes to the District Court that are not relevant here. Just before lunch on the third day, the jury submitted another note, which stated:

> Dear Judge Simandle, we have agreement on four of the eight counts. However, on the other four counts we have one dissenting vote from the same juror. We have been informed that this one vote will not change no matter how much more discussion there is. What should we do? Signed [jury foreperson].

(A 248; hereinafter "Jury Note A".) In response to this note, defense counsel requested that the judge accept the partial verdict and a hung jury as to the four remaining counts. The judge denied this request, and instead, called the jurors into the courtroom and stated: "I'm asking that you continue to deliberate and that you continue to give your best efforts toward reaching unanimity." (A 255.) He then repeated his jury instruction as to unanimity, including the statement:

> It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong, but do not give up your honest beliefs solely because others may think differently or merely to get the case over with.

(A 255-56.) Boone did not raise any objection to this instruction before the District Court, and does not do so here.

Shortly after lunch on the same day, the jury sent another note:

> We have some serious concern about one of our

4

fellow jurors. He has told . . . all of us several times that his best friend is a cop, and he has several guns, some unregistered and being stored at his friend's house. This leads us to believe that he lied on his initial questionnaire for jury selection. Also, he refuses to discuss certain [counts] because he had his mind made up before we started deliberating. He has said he does not believe anything the police said and thinks everyone is lying. We feel this seriously affects our deliberations. Our votes are 11 to [] 1 on four [counts] and we have agreed on four. The juror in question has stated they will not change their mind [sic] and does not want to work at any evidence or discuss any testimony. We seem to be at an impasse. Please help us. Thank you, [jury foreperson].

(A 257-58; hereinafter "Jury Note B".) The government suggested that the District Court dismiss the complained-of juror (hereinafter "Juror X"), while the defense urged a mistrial on all counts or, alternatively, acceptance of the verdict on the counts agreed upon by the jury and a mistrial as to the remaining counts. The District Court declined to take immediate action and offered time for both parties to research the legal issues involved. For the interim period, the District Court sent a note to the jury:

In reply to your latest note, you should continue your deliberations in accordance with the instruct[ions] I've previously [given] and in accordance with the oath you have each taken as jurors. In that oath, you each solemnly swore or affirmed under penalty of perjury, "that you will well and truly try U.S. v. Kevin Boone now on trial and render a true verdict according to the law and the evidence." The administration of justice depends upon your faithful adherence to the oath.

(A 264-65.) Defense counsel objected to this note, arguing that it inappropriately singled out Juror X. Judge Simandle overruled

5

the objection. (A 265-67.) About an hour later, the jury sent another note that included a message from both Juror X and the foreperson. (Hereinafter "Jury Note C.") Juror X's message stated: "I am unable to agree for two days on my morals and beliefs [that] there was enough evidence to agree with the other jurors." (A 269.) The foreperson's message stated: "We have been deadlocked on the four counts for just about two days. Signed [jury foreperson]." (Id.)

In response to this note, defense counsel again urged a mistrial on the four deadlocked counts. Government counsel suggested that the District Court bring Juror X into the courtroom and ask him whether he had preconceived biases and whether he was truthful during voir dire. Defense counsel strenuously objected to this proposal. After a discussion of relevant precedent, the District Court determined that asking Juror X a "narrow set of questions" was justified based on the foreperson's allegation that Juror X lied in his voir dire and that he refused to consider the evidence in the case. (A 306.)

The courtroom was emptied (apart from the parties and the judge's law clerk), and Juror X was seated in the jury box for questioning, which proceeded as follows:

> Court (Q): Okay, good afternoon.
> Juror (A): Good afternoon.
> Q: Let me ask you to state your name.
> A: [Juror X stated name.]
> Q: I'm sorry, could you say that again?
> A: [Juror X stated name and spelled it.] I'm sorry, I'll speak up.
> Q: Now, [Juror X], I just wanted to ask you a few questions about the note that you sent into me through your foreperson.
> A: Um-hum.
> Q: Did you write the note?
> A: Yes.
> Q: And is the note true?
> A: Yes.
> Q: Is your participation in the jury's deliberations formed by a preconceived view of evidence such

6

that you would never accept the testimony of a
police officer?
A: No, it was because of too many discrepancies in
different things.
Q: Is your view of the evidence, I'm sorry, is your
participation in the jury's deliberations based upon
your examination and consideration of the specific
evidence in this case?
A: I'm not sure I still understood that.
Q: Is your participation in the jury's deliberations
based upon your consideration of the specific
evidence in this case?
A: Oh, yes, yes.
Q: And am I correct that you have considered the
evidence in this case?
A: Yes.
Q: Is it true or not that you refused to discuss
certain counts with the other members of the jury?
A: No, I told them how I felt two days ago on
these counts and I explained reasons why.
Q: All right. And I'm not going into the reasons,
but are you assuring me that you have discussed
your views with –
A: Yes. We're still in there discussing, and it
hasn't changed my mind yet.
Q: Okay, very well.

(Sealed Appendix 311-13.) The District Court then sent Juror X
back to the jury room. Based on Juror X's responses to
questioning, the District Court found insufficient evidence that
Juror X had preconceived notions or had disregarded evidence,
and determined that further investigation would be unduly
intrusive. (A 314.) The entire jury was then called back into the
courtroom, and the District Court stated:

> I wanted to bring you into the courtroom so I could
> make a response to the two most recent notes sent
> to me by your foreperson, including the most
> recent note, which also had the writing of one of
> your fellow jurors. The Court has made suitable
> inquiry and encourages the jury to continue its

7

deliberations, unless and until you reach the point where the jury believes that no further discussions would be fruitful. If you reach that point and believe that you have unanimous verdicts on some counts and you don't have unanimous verdicts and never will on other counts, then you can so inform me in a note. At that point I'll take up your note with counsel and I'll act accordingly. If continued discussions might bear fruit as to your areas of disagreement, then, of course, you are permitted to continue those discussions, and are encouraged to do so if further discussions may lead to agreement. And by agreement I also mean agreement either way, either by a minority of jurors changing their views or by a majority of jurors changing their views. And, finally, I'll request that you return to the jury room and I'll await any further word from you about what you would like to do. If I don't hear anything, then I'll assume that you are continuing your deliberations; if I receive a note, then I'll respond as quickly as I can, okay?

(A 316-17.) Soon after, the District Court received a note from the jury stating: "Judge Simandle, all options are at an impasse. We are unable to make any new decisions." The note also stated that various jurors had scheduling conflicts during upcoming deliberation days. (A 318.) In response, the District Court sent the jury the following note: "Dear members of the jury, please clarify your note. Is the jury hopelessly deadlocked or do you agree to continue deliberations to see whether your impasse can be overcome. I await your response." (A 321.)  The jury sent back: "We reviewed the [counts] again. Despite our attempts to come to a unanimous decision, we are hopelessly deadlocked." (A 323.) Based on this note, the judge ended jury deliberations and accepted the jury's guilty verdict as to four counts and a hung jury as to the other four counts.

## II. DISCUSSION

### A. Standard of Review and Jurisdiction

This Court reviews a trial court's response to allegations of juror misconduct for abuse of discretion. See United States v. Resko, 3 F.3d 684, 690 (3d Cir. 1993). In reviewing jury instructions, we consider the legal standard stated in the instructions *de novo*, but apply an abuse of discretion standard as to the specific wording of the instructions. United States v. Yeaman, 194 F.3d 442, 452 (3d Cir. 1999). "This Court reviews jury instructions to determine whether, 'taken as a whole, they properly apprized the jury of the issues and the applicable law.'" Id. (quoting Dressler v. Busch Entm't Corp., 143 F.3d 778, 780 (3d Cir. 1998)).

The District Court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over Boone's appeal of his conviction and sentence pursuant to 28 U.S.C. § 1291.

## B. The District Court's Response to Jury Note B

In response to Jury Note B, in which the jury expressed "some serious concern" about Juror X and stated that he may have lied on his jury questionnaire and "does not believe anything the police said," the District Court instructed the jurors to continue deliberating, and reminded them of the oath they took under penalty of perjury to "well and truly try U.S. v. Kevin Boone now on trial and render a true verdict according to the law and the evidence." Boone challenges this note, arguing that it improperly singled out Juror X and implicitly threatened him with perjury charges if he did not change his mind.

It "has long been recognized" that "a judge may not 'coerce' the jury into reaching a verdict." United States v. Fioravanti, 412 F.2d 407, 416 n.20 (3d Cir. 1969). We will find a supplemental charge to be unduly coercive, however, only "where the . . . charge caused the jury to be 'influenced by concerns irrelevant to their task' and [where the jury] 'reached its subsequent verdict for reasons other than the evidence presented to it.'" United States v. Jackson, 443 F.3d 293, 297 (3d Cir. 2006) (quoting United States v. Eastern Med. Billing, Inc., 230 F.3d 600, 613 (3d Cir. 2000)).

9

Here, the District Court's reference to the oath clearly does not rise to the level of coercion as that term has been interpreted in the jury context. See, e.g., Jackson, 443 F.3d at 296-98 (finding no coercion where, in response to a note from the jury stating that one juror could not agree with the others, the district court reminded the jurors of their oath and stated that the case would have to be retried if they could not agree); United States v. Henry, 325 F.3d 93, 107 (2d Cir. 2003) (noting that "[t]he mere fact that the district court reminded the jurors of their oaths and responsibility to deliberate and attempt to render a true verdict does not render the charge coercive"). Instructions held to be coercive generally involve substantial and explicit pressure from the court for a verdict or for a particular result. See, e.g., Jenkins v. United States, 380 U.S. 445, 446 (1965) (per curiam) (finding a supplemental jury instruction coercive where, after the jury had deliberated for slightly over two hours and declared itself deadlocked, the judge told the jury: "You have got to reach a decision in this case."); United States v. Burley, 460 F.2d 998, 999 (3d Cir. 1972) (finding reversible error where, after the jury reported that it was deadlocked due to one juror, the judge told the jury that if they did not reach agreement there would have to be another trial that would lead to "great additional expense"); Fioravanti, 412 F.2d at 415-17 (finding impermissibly coercive a supplemental jury instruction telling jurors who held the minority viewpoint to reconsider their position). Such pressure was entirely absent here. Thus, based on applicable precedent, the District Court's instruction in this case cannot be considered impermissibly coercive.

## C. Juror Questioning

Next, Boone argues that the District Court should not have conducted an examination of Juror X. This claim is in some tension with our decisions requiring district courts to conduct comprehensive investigations in response to serious allegations of jury impropriety. See Resko, 3 F.3d at 686 (granting new trial where judge investigated allegations of premature jury deliberation with written questionnaire, but failed to investigate further through individual juror questioning); Gov't of V.I. v. Dowling, 814 F.2d 134, 141 (3d Cir. 1987) (holding that judge's investigation of allegations of jury taint through poll of jury was

10

not thorough enough to allow clear evaluation of potential prejudice). Juror questioning is a permissible tool where juror misconduct is alleged, and we have encouraged its use in such investigations. See United States v. Console, 13 F.3d 641, 667 (3d Cir. 1993) (noting that individual juror questioning is the "method of inquiry . . . we have preferred '[w]here there is a significant possibility that a juror or potential juror has been exposed to prejudicial extra-record information'") (quoting Dowling, 814 F.2d at 137); Dowling, 814 F.2d at 137 ("an individualized examination is the most effective manner by which to discover latent prejudices on the part of a particular juror") (citation and quotation marks omitted).

Boone notes that these decisions generally involved allegations of mid-trial jury misconduct rather than of a juror's refusal to deliberate properly. According to Boone, investigations that implicate the content of jury deliberations are by their nature much more intrusive than investigations of jury misconduct during trial, and the former should be severely limited. Boone points to United States v. Thomas, 116 F.3d 606 (2d Cir. 1997), in which the Second Circuit suggested that a judge should be particularly cautious in conducting investigations of juror misconduct during deliberations. In Thomas, jurors complained during trial that one juror was behaving disruptively, and the judge conducted an examination of each juror individually to investigate the issue. Id. at 609-10. The judge determined that the trial should continue. Id. at 611. Once deliberations began, however, jurors again complained about the juror, alleging that he was bent on acquittal for reasons unrelated to the evidence in the case. Id. The judge again conducted individual juror questioning, and concluded that the disruptive juror should be dismissed because he intended to commit jury nullification.[2] Id. at 612. The Second Circuit

---

[2] Jury nullification is "a jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." Black's Law Dictionary 875 (8th ed.

11

reversed. Although the court agreed that a juror's intent to nullify would justify dismissal in principle, it found that the evidence was not "beyond doubt" that the juror in this case had an intent to nullify rather than simply having permissible reservations about the sufficiency of the evidence. Id. at 614, 624. The court held that where an allegation of jury nullification arises, "'if the record evidence discloses any possibility that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request.'" Id. at 622-23 (quoting United States v. Brown, 823 F.2d 591, 596 (D.C. Cir. 1987)).

The Thomas Court noted that an accusation that a juror intends to nullify is difficult to prove, and that obtaining definitive evidence could require significant intrusion into a juror's thought process. Id. at 621. Emphasizing the importance of secret deliberations to the effective operation of the jury system, the court concluded that a trial judge generally should not conduct extensive investigation of jury nullification claims, even if some juror misbehavior might be go unaddressed. Id. at 622-23. Choosing "to protect deliberative secrecy at the risk of leaving some juror misconduct beyond the court's power to remedy," id. at 623, the court adopted the rule that a "presiding judge faced with anything but unambiguous evidence that a juror refuses to apply the law as instructed need go no further in his investigation of the alleged nullification," id. at 622. Under this rule, juror questioning presumably would be impermissible absent clear evidence of juror nullification.[3]

---

2004).

[3] In United States v. Symington, 195 F.3d 1080, 1087 (9th Cir. 1999), the Ninth Circuit adopted much of the Thomas Court's reasoning but did not elaborate on the Thomas opinion regarding the circumstances in which juror questioning during deliberations is appropriate. See id. at 1086. Similarly, in United States v. Brown, 823 F.2d 591 (D.C. Cir. 1987), a case on which Thomas relied and which Boone cites as support, the D.C. Circuit addressed the dismissal of a juror during deliberations but did not discuss the appropriate use of juror questioning

The Second Circuit moderated somewhat its disapproving view of trial court investigation into allegations of jury misconduct during deliberations in United States v. Baker, 262 F.3d 124 (2d Cir. 2001). In Baker, the jury sent several notes to the judge during deliberations complaining that one of the jurors refused to consider the evidence and refused to deliberate. Id. at 128. The judge questioned the juror and concluded that dismissal was appropriate. Id. at 129. On appeal, the court declined to remand, holding that whether to question a juror is within the trial judge's "sound discretion," and that the District Court acted within its discretion in carefully interviewing the juror and then dismissing her. Id. at 129-30. The court also concluded that the Thomas rule did not apply because while the juror in Thomas was allegedly refusing to base his vote on the evidence – "a reason that is dangerously difficult to distinguish from a refusal to view the evidence as viewed by the other jurors" – the Baker juror had allegedly refused to engage in jury deliberations entirely. Id. at 132. Where there are allegations of a refusal to deliberate rather than allegations of nullification, the Baker Court held, questioning of the jury is within the sound discretion of the judge. Id.

We recognize the important competing interests that are implicated in a judge's intrusion into jury deliberations to investigate allegations of jury misconduct. It is beyond question that the secrecy of deliberations is critical to the success of the jury system. See United States v. Antar, 38 F.3d 1348, 1367 (3d Cir. 1994) (Rosenn, J., concurring) ("We must bear in mind that the confidentiality of the thought processes of jurors, their privileged exchange of views, and the freedom to be candid in their deliberations are the soul of the jury system."); Symington, 195 F.3d at 1086 ("'Juror privacy is a prerequisite of free debate, without which the decisionmaking process would be crippled.'")

_____

during deliberations. See id. at 596. In both Symington and Brown, the district courts conducted juror questioning in response to indications that a juror was not deliberating properly, and neither appellate court discussed whether this use of questioning was error. See Symington, 195 F.3d at 1083-84; Brown, 823 F.2d at 594.

13

(quoting Note, <u>Public Disclosures of Jury Deliberations</u>, 96 Harv. L. Rev. 886, 889-90 (1983)).

For this reason, a district court should be more cautious in investigating juror misconduct during deliberations than during trial, and should be exceedingly careful to avoid any disclosure of the content of deliberations. <u>See</u> <u>Thomas</u>, 116 F.3d at 618 ("[A] district court's authority to investigate allegations of juror impropriety necessarily becomes more limited once the jury has begun to deliberate."). It is also manifest, however, that a juror who refuses to deliberate or who commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role. <u>See</u> <u>id.</u> at 608 (holding that a juror's refusal to apply the law as stated by the court is "an obvious violation of a juror's oath and duty" and is grounds for dismissal); <u>Baker</u>, 262 F.3d at 130 ("It is well-settled that jurors have a duty to deliberate.").

In light of these competing interests, we hold that where substantial evidence of jury misconduct – including credible allegations of jury nullification or of a refusal to deliberate – arises during deliberations, a district court may, within its sound discretion, investigate the allegations through juror questioning or other appropriate means. In adopting this standard, we emphasize that a district court, based on its unique perspective at the scene, is in a far superior position than this Court to appropriately consider allegations of juror misconduct, both during trial and during deliberations. <u>See, e.g.</u>, <u>Dowling</u>, 814 F.2d at 137 ("[T]he trial judge develops a relationship with the jury during the course of a trial that places him or her in a far better position than an appellate court to measure what a given situation requires."); <u>United States v. Ruggiero</u>, 928 F.2d 1289, 1300 (2d Cir. 1991) (declining to "second guess the conclusion of the experienced trial judge, based in large measure upon personal observations that cannot be captured on a paper record" where a juror was dismissed during deliberations following questioning by the judge). Thus, keeping in mind the importance of maintaining deliberative secrecy, we apply explicitly to the context of jury deliberations our previous holding that a district court has broad discretion in addressing claims of juror

14

misconduct.[4]

Boone's citation to other circuit precedent does not convince us to adopt a different standard. Boone points to no decision remanding for a new trial based solely on a district court's use of juror examination during deliberations, as opposed to a district court's dismissal of a juror. Although the Thomas Court discouraged investigation of nullification claims during jury deliberations, it explicitly declined to consider whether the District Court went too far in conducting juror questioning in that case. Thomas, 116 F.3d at 624 ("We need not reach the question of whether the [district] court's inquiries were themselves sufficiently intrusive to constitute reversible error."). The court in Thomas also affirmed a trial court's "inherent authority to conduct inquiries in response to reports of improper juror conduct and to determine whether a juror is unwilling to carry out his duties faithfully and impartially." Id. at 617. To the extent that the Thomas Court prohibited a district court from investigating allegations of nullification or refusal to deliberate in the absence of entirely unambiguous evidence of juror misconduct, we hold otherwise.[5]

Applying the standard set forth above, the District Court did not abuse its discretion here. The foreperson's claims in Jury Note B that Juror X "refuses to discuss certain [counts] because he had his mind made up before we started deliberating" and that Juror X stated that he "will not change [his] mind and does not want to work at any evidence or discuss any testimony" provided

---

[4] Our focus here is solely on a district court's authority to investigate allegations of jury misconduct. Thus, we do not consider the question directly at issue in Brown, Thomas, Baker, and Symington – the quantum of evidence required for the *dismissal* of a juror based on jury nullification or refusal to deliberate.

[5] Under the reasoning in Baker, the Thomas standard applies only to allegations of jury nullification, not to allegations that a juror refuses to deliberate. See Baker, 262 F.3d at 132. Our holding here applies to both types of allegations.

15

substantial evidence that Juror X was refusing to deliberate as instructed. Although this evidence was far from unambiguous, there was a sufficient indication that Juror X was violating his oath to provide discretion to the trial judge to investigate further. The fact that a different judge may have chosen not to conduct a investigation is irrelevant; regardless, the District Court's decision to do so here was not an abuse of discretion.

Moreover, the manner in which the District Court questioned Juror X was thoughtful, careful, and fair. Prior to the questioning, the judge emptied the courtroom of all spectators aside from his law clerk, lessening any intimidation Juror X might experience. Boone argues that the District Court should not have asked the juror his name. This inquiry was unlikely to be interpreted as coercive by Juror X, however, since he had watched as each witness at trial was asked to state his or her name immediately after being sworn in. After the juror stated his name, the judge asked him (1) whether he had written Jury Note C and whether it was true; (2) whether he had a preconceived view of the evidence such that he would not accept the testimony of a police officer; (3) whether his participation in the deliberations was based on a consideration of the specific evidence in the case; and (4) whether he had refused to discuss certain counts with other members of the jury. The concise and carefully-worded examination avoided inquiry into the content of the deliberations or the views of the juror. We find no abuse of discretion in the content of the examination.

## D. The District Court's Instructions Following Juror Questioning

After questioning Juror X, the District Court concluded that Juror X was fulfilling his role properly, and gave a brief instruction to the full jury before sending it back to deliberate. Boone argues that this instruction was improper. As Boone did not object at the time, this Court reviews the instruction for plain error. See United States v. Vazquez, 271 F.3d 93, 99 (3d Cir. 2001). Under this standard, "we will reverse the trial court only where a plain error was 'fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a

16

miscarriage of justice.'" <u>Franklin Prescriptions, Inc. v. New York Times Co.</u>, 424 F.3d 336, 339 (3d Cir. 2005) (citation omitted).[6]

First, Boone objects to the following statement in the District Court's supplemental instruction:

> If continued discussions might bear fruit as to your areas of disagreement, then, of course, you are permitted to continue those discussions, and are encouraged to do so if further discussions may lead to agreement. And by agreement I also mean agreement either way, either by a minority of jurors changing their views or by a majority of jurors changing their views.

According to Boone, this instruction constituted a so-called <u>Allen</u> charge, which this Court has defined as an instruction in which "the court direct[s] the minority jurors to reconsider their views in light of their disagreement with the majority." <u>Eastern Med. Billing, Inc.</u>, 230 F.3d at 602 n.1. The Supreme Court upheld such a charge in <u>Allen v. United States</u>, 164 U.S. 492, 501-02 (1896). In <u>Fioravanti</u>, however, this Court, exercising its supervisory power over the district courts, held that the use of an <u>Allen</u> charge in this Circuit would, from that point on, constitute reversible error except in "very extraordinary circumstances." <u>Fioravanti</u>, 412 F.2d at 420; <u>see also</u> <u>Eastern Med. Billing</u>, 230 F.3d at 607-08. In <u>Eastern Medical Billing</u>, we held that the trial court had given an impermissible <u>Allen</u> charge where it instructed, in part, as follows:

---

[6] Boone suggests that the abuse of discretion standard rather than the plain error standard should apply because the judge's instruction was more expansive than the instruction that he told counsel he would give, and Boone's counsel did not object before the instruction for that reason. Counsel for Boone could have objected during or after the instruction, however, and his failure to do so leads to plain error review. Regardless, we would find no error here even under the abuse of discretion standard.

17

> If the greater number of you are for one side, each dissenting juror ought to consider whether his or her view is a reasonable one since it makes no effective impression on the minds of so intelligent fellow jurors who bear the same responsibility . . . Also, the jurors who constitute the greater number should consider the reasons of those who take a different position to see whether there may be persuasive merit in that position.

230 F.3d at 605, 613.

The District Court's instruction in this case is clearly distinguishable from those we have previously found impermissible. The Court here did not encourage either the minority or the majority jurors to change their view, but simply stated that unanimous agreement could be reached through a change in viewpoint by either group. Cf. Eastern Medical Billing, 230 F.3d at 613 (noting that "although the Court mentioned both the majority and minority jurors, the instruction clearly portrayed the minority jurors as holding less intelligent or reasonable views than the majority jurors"). The District Court's mere reference here to the minority of jurors did not constitute plain error.

Boone also argues that the District Court in its supplemental instruction should not have encouraged further deliberation without asking the jurors if they wished to continue. In fact, the Court encouraged the jury to deliberate only "until you reach the point where the jury believes that no further discussions would be fruitful." Thus, the Court clearly informed the jurors that they could stop deliberating when they were at an impasse, and the instruction was not coercive. See United States v. Graham, 758 F.2d 879, 884 (3d Cir. 1985) (noting that a judge's "'action in requiring further deliberation after the jury has reported a disagreement does not, without more, constitute coercion'") (citation omitted).[7]

---

[7] Boone's additional challenges to the District Court's supplemental instruction are without merit. He provides no

18

## E. Booker Claim

The District Court sentenced Boone on February 20, 2003, prior to the Supreme Court's decision in <u>Booker</u>. Boone was sentenced under a mandatory guideline system, and as the government concedes, we therefore must remand for resentencing in accordance with <u>Booker</u>. <u>See</u> <u>Davis</u>, 407 F.3d at 164-65.[8]

## III. CONCLUSION

For the reasons stated above, we affirm Boone's conviction but vacate his sentence and remand for resentencing pursuant to <u>Booker</u>.

---

support for his assertion that the Court's references to Jury Note B and to the dissenting juror were coercive. Moreover, his claim that the District Court presumed a unanimous verdict as to certain counts is not supported by the record. None of these challenged elements of the instruction constituted plain error.

[8] Because we remand for resentencing, we decline to consider Boone's additional claims of error as to sentencing.

19