

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-14-2006

# USA v. Clark

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2308

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Clark" (2006). *2006 Decisions.* Paper 99.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/99

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2308

_____

UNITED STATES OF AMERICA

v.

ANDREW CLARK,

Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 02-cr-00785-1)
District Judge: Honorable William H. Walls

_____

Submitted Under Third Circuit LAR 34.1(a)
December 4, 2006

Before: RENDELL and AMBRO, Circuit Judges
BAYLSON,[*] District Judge

(Opinion filed: December 14, 2006)

_____

OPINION

_____

AMBRO, Circuit Judge

      Andrew Clark appeals his conviction and sentence for bank fraud.  For the reasons

_____

[*]Honorable Michael M. Baylson, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

that follow, we affirm.

**I.**  **Facts and Procedural History**

Clark was charged with two counts of bank fraud in violation of 18 U.S.C. § 1344. He pled not guilty to both counts. The jury convicted him of one and acquitted him of the other.

As to the count on which Clark was convicted, the Government alleged that he orchestrated a scheme to withdraw funds illegally from PNC Bank accounts. Specifically, Clark recruited Mercedes Gibbs, a PNC teller, to sell him the confidential information of PNC account holders, including names, account numbers, Social Security numbers, and copies of signature cards. Clark requested joint accounts containing more than $15,000. He paid Gibbs $500 per account. To withdraw the funds, Clark solicited the help of An-Nur Hamilton in recruiting two people (one male and one female) to impersonate account holders. Clark himself recruited Joyce Troche, the female impostor, and Hamilton, at Clark's direction, recruited James Myers, the male impostor. Clark also directed Hamilton to make fake identification cards for Troche and Myers to use in withdrawing funds from PNC. Over the course of a month, Clark's group made 17 attempts to withdraw funds, 15 of which were successful. In terms of amount, they attempted to withdraw a total of $131,770.49 and succeeded in withdrawing $106,059.21.

In the Pre-Sentence Report, the Government calculated the Guidelines offense level at 19. This level comprises:

- A base level of six, U.S.S.G. § 2F1.1; [1]
- A seven-level enhancement for an amount defrauded or attempted between $120,000 and $200,000, U.S.S.G. § 2F1.1(b)(1)(H) (2000);
- A two-level enhancement for more than minimal planning, U.S.S.G. § 2F1.1(b)(2)(B); and
- A four-level enhancement for Clark's role as leader/organizer of the group, U.S.S.G. § 3B1.1(a).

The PSR further calculated a criminal history category of V. Putting these together, the Guidelines yielded a range of 57 to 71 months' imprisonment. At the sentencing hearing, Clark contested all three enhancements, but the Judge found each of them applicable by clear and convincing evidence. The Judge did not address all of the 18 U.S.C. § 3353(a) factors.[2] He, however, heard defense counsel's argument on a number of those factors

---

[1] All references to the U.S. Sentencing Guidelines are to the 2000 Manual, as that was the one used in sentencing Clark.

[2] Section 3553(a) states in relevant part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional

and commented on them. After a full colloquy, the Judge imposed a sentence of 64 months' imprisonment—the middle of the Guidelines range.

Clark appeals.[3]

## II. Standards of Review

Whether an indictment is duplicitous is a question of law subject to *de novo* review. *United States v. Haddy*, 134 F.3d 542, 547 (3d Cir. 1998). We review issues not raised in the District Court for plain error. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). We review the admission of evidence of other bad acts for abuse of discretion. *United States v. Boone*, 279 F.3d 163, 187 n.17 (3d Cir. 2002). We review constitutional issues *de novo*, *United States v. Torres*, 383 F.3d 92, 96 (3d Cir. 2004), and

<p style="margin-left:2em">treatment in the most effective manner;</p>

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

<p style="margin-left:2em">(A) the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines—</p>

. . . ;

(5) any pertinent [Sentencing Commission] policy statement—

. . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

---

[3]The District Court had jurisdiction under 18 U.S.C. § 3231 (offenses against the United States). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

we review sentences for reasonableness. *United States v. Cooper*, 473 F.3d 324, 327 (3d Cir. 2006).

## III. Discussion

### A. Was the Government's combination of 17 instances of bank fraud into one count proper?

The Government charged Clark with one count of bank fraud against PNC. That count comprised 17 separate withdrawals and attempted withdrawals of funds, 10 by Joyce Troche and seven by James Myers. Clark argues that the indictment was duplicitous because it deprived the jury of the ability to pass judgment on his guilt with respect to each withdrawal.[4] He particularly objects to charging Troche and Myers's withdrawals in the same count because he claims that the evidence of his connection to Myers was substantially weaker; thus, he argues, the jury could have acquitted him on those transactions. He further argues that even if the indictment were proper, the Judge's denial of his request for a special verdict was improper.

We cannot accept Clark's arguments. To determine how an offense should be

---

[4] Clark refers to the alleged problem with the indictment as "misjoinder." This is a mislabel. "Misjoinder" typically refers to the improper charging of multiple counts or multiple defendants in one indictment; it does not typically refer to selecting the wrong unit of prosecution. The proper unit of prosecution is a distinct offense, as defined by the U.S. Code. In determining this, two errors are possible. First, if the Government improperly charges the same offense in multiple counts, the indictment is "multiplicitous," which if true implicates double jeopardy concerns. If, as alleged here, the Government charges two or more distinct offenses in one count, the indictment is "duplicitous," which improperly deprives the defendant of a jury verdict on each distinct offense. Both errors render the indictment defective. Charles Alan Wright et al., 1A Fed. Practice & Procedure: Criminal 3d § 142 (1999).

5

charged, we look to the statute to see what the substantive offense is. *Haddy*, 134 F.3d at 548. Here, to commit bank fraud "a defendant must execute, or attempt to execute, a scheme or artifice, intended to victimize a federal bank or federally insured bank by causing it an actual or potential loss of its own funds." *United States v. Thomas*, 315 F.3d 190, 206 (3d Cir. 2002); *see also* 18 U.S.C. § 1344. In other words, the offense is the *execution* of the scheme, not the scheme itself. *United States v. Schwartz*, 899 F.2d 243, 248 (3d Cir. 1990). As a result, we and certain of our sister circuits have held that each attempt to execute the scheme can be charged separately. *Id.*; *see also United States v. King*, 200 F.3d 1207, 1213 (9th Cir. 1999); *United States v. Bruce*, 89 F.3d 886, 889–90 (D.C. Cir. 1996); *United States v. Hamman*, 977 F.2d 379, 383 (7th Cir. 1992).

The question here, however, is whether each attempt must be charged separately. The Government's theory of the case was that each withdrawal was part of an overall scheme, orchestrated by Clark, to defraud PNC. To prove commission of the offense, the Government needed only to show that Clark executed or attempted to execute the scheme once. Under these circumstances, our sister circuits have held that it is appropriate for the Government to charge but one count of bank fraud, alleging that the defendant took part in a fraudulent scheme that was executed at least once. *See King*, 200 F.3d at 1213; *Bruce*, 89 F.3d at 889–90; *Hamman*, 977 F.2d at 383. We review allegations of duplicity with the following concerns in mind: "'(1) the prevention of double jeopardy, (2) an assurance of adequate notice to the defendant, (3) the provision of a basis for appropriate sentencing, and (4) the danger that a conviction was produced by a verdict that may not

6

have been unanimous as to any one of the crimes charged.'" *Bruce*, 89 F.3d at 890

(quoting *United States v. Shorter*, 809 F.2d 54, 58 n.1 (D.C. Cir. 1987)).

There is no question double jeopardy does not apply here. In addition, Clark was

on notice that the Government was alleging multiple transactions within the overall

scheme, and the Judge made it clear that a guilty verdict meant that the jury agreed on at

least one execution or attempted execution of the scheme. Clark's primary concern is

sentencing: he argues that it was unfair to sentence him on the basis of all of the

transactions when the jury may only have convicted him of one. The problem with this

argument is that the amount of the fraud for sentencing purposes is determinable by the

trial judge by a preponderance of the evidence, so no jury right is implicated. *Cooper*,

437 F.3d at 330 (3d Cir. 2006). Thus, charging only one count was proper, and no special

verdict was required.[5]

### B. Did the prosecutor improperly vouch for the credibility of a critical witness?

As an initial matter, we review this issue for plain error, as defense counsel did not

object to the prosecutor's allegedly improper statements at trial. *Brennan*, 326 F.3d at

182. As such, we must determine that there was an error, it was plain, and it affected

Clark's substantive rights. Even if so, correction of that error is discretionary and should

only be ordered where the error seriously affected the fairness, integrity, or public

---

[5] We note that an alternative sustaining ground is that Clark waived this argument by not raising it before trial, as is required for alleged defects in an indictment. *See Davis v. United States*, 411 U.S. 233, 236–37 (1973).

reputation of the proceeding. *United States v. Olano*, 507 U.S. 725, 733–38 (1993).

Clark argues that in his closing statement the prosecutor improperly vouched for the credibility and consistency of An-Nur Hamilton's testimony. Hamilton testified at trial that Clark never dealt directly with the male impostor James Myers; rather, Hamilton testified that he had hired Myers at Clark's direction. According to FBI Agent Koby's notes, Hamilton said in a previous interview that Myers and Clark were "associates." Koby, however, testified that "associates" was his word, not Hamilton's. Neither side asked Koby to clarify the point further. In his closing argument, defense counsel stated that Hamilton's testimony was not credible because it was inconsistent: Hamilton had essentially told Koby that Clark and Myers knew one another in an interview and then at trial testified that they did not. In response, the prosecutor argued that the testimony was consistent because Koby, not Hamilton, had used the word "associates" and that word accurately described Myers and Clark's relationship because, despite the fact that they did not know each other, the two were engaged in a joint criminal enterprise.

To make out a claim of improper vouching, Clark must show that "(1) the prosecutor [assured] the jury that the testimony of a Government witness [was] credible; and (2) this assurance [was] based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998). While improper vouching can be implicit rather than explicit, the prosecutor's comments simply do not leave us with the impression that he was vouching for anything at all, much less that he was referring to personal knowledge in so doing. Rather, he was

8

offering an alternate, plausible interpretation of the evidence, which was a proper response to defense counsel's argument. It certainly did not rise to the level of plain error.

**C.** **Did the District Court abuse its discretion in admitting evidence of Clark's possession of a fake identification card in 2002 for the purpose of proving opportunity?**

In 2002 Clark was arrested for possessing a false identification card. This was some two years after the events covered by his indictment for bank fraud. The District Judge admitted the evidence under Federal Rule of Evidence 404(b) for the sole purpose of proving that Clark had the opportunity and ability to acquire fake identification cards, as he allegedly did in connection with the bank fraud charges.

To be admissible under Rule 404(b), evidence of other bad acts must meet four criteria: (1) have a proper evidentiary purpose, (2) be relevant, (3) have probative value outweighing prejudicial value, and (4) be accompanied by a jury instruction explaining the limited purpose for which the evidence may be used. *United States v. Huddleston*, 485 U.S. 681, 691–92 (1988). Here, the Government offered this evidence for the purpose of showing that Clark had the ability to procure fake identification cards, as he was accused of doing in connection with the charged counts of bank fraud. It further argued that the evidence was not unfairly prejudicial because procuring a fake identification card is a relatively common, low-level offense, and so the jury would not take it as evidence of a character disposed to commit serious bank fraud.

The Judge agreed with the Government, and we do not find that he abused his

9

discretion in so doing. As the District Judge found, the evidence did suggest that Clark knew how to obtain a fake identification card, which (as the Judge noted) is not something that everyone knows how to do. Given that the Government was accusing Clark of obtaining fake identification cards for his impostors, the Judge was correct in finding that evidence of his ability to do so was relevant and offered for a proper purpose. In addition, the Judge's findings as to prejudice are reasonable. Bank fraud is a far more serious and complex crime than possession of a fake identification card, and so it seems doubtful that allowing in evidence of the latter would prejudice the jury as to the former. After making his ruling, the Judge issued a curative instruction explaining that the jury could only consider the evidence as probative of opportunity and not of Clark's character. In this context, the Judge did not abuse his discretion in admitting the evidence.

**D. Did the District Court err in its handling of a juror's complaint of pressure?**

During deliberations, one of the jurors asked to speak with the Judge. When she was brought in, she asked to be replaced by one of the alternates. The Judge asked her why, and she stated that she felt harassed by two other members of the jury. He asked her how she was harassed, and she stated that she was being pressured to change her mind. In response, the Judge referred her back to his jury instructions, which stated that jurors should listen to one another but keep to their firmly held views. The juror then returned to deliberations, and just 40 minutes later the jury returned a verdict.

Because defense counsel did not object to the Judge's handling of the matter (and

10

in fact affirmatively stated that he had no problem with it), we review the Judge's actions for plain error. *Brennan*, 326 F.3d at 182.

Clark argues that the Judge should have issued a strong curative instruction to the entire jury, and that the failure to do so resulted in the aggrieved juror changing her vote. Handling alleged juror misconduct rests within the sound discretion of the District Court. *Boone*, 458 F.3d at 326. Here, given that the problem was brought to the Judge's attention on the second day of deliberations, it was reasonable for the Judge to remind the juror that, while she should listen to others's views, doing so should not dissuade her firmly held beliefs. Certainly the Judge did not pressure her into changing her mind. *Cf. United States v. Fioravanti*, 412 F.2d 407, 419 (3d Cir. 1969) (criticizing the use of supplemental charges to "blast a hung jury into a verdict"). Absent an allegation or evidence of coercion more serious than mere attempts to get the juror to change her mind, the Judge reasonably concluded that nothing more was required. *See Government of Virgin Islands v. Gereau*, 502 F.2d 914, 936 (3d Cir. 1974). His handling of the situation certainly did not add up to anything like plain error.

### E. Did the District Court err in determining the applicability of sentencing factors by clear and convincing evidence?

Clark claims that the Judge found the amount of his fraud by clear and convincing evidence at his sentencing hearing when that issue should have been submitted to the jury and found beyond a reasonable doubt. We have never held that sentencing factors that do not push the sentence over the statutory maximum require proof beyond clear and

convincing evidence, which is the standard that the District Judge used in finding all factors relevant to calculating the proper Guidelines range. *Cf. United States v. Kikumura*, 918 F.2d 1084, 1101 (3d Cir. 1990) (holding that clear and convincing evidence is required in some circumstances). Nothing in *United States v. Booker*, 543 U.S. 220 (2005)*,* changes that. *See Cooper*, 437 F.3d at 330. Thus, for the Judge here to find the relevant sentencing factors by clear and convincing evidence does not offend the Constitution.

## F.     Was the sentence of 64 months' imprisonment unreasonable?

Under our holding in *Cooper*, district courts must properly calculate the Guidelines range, 437 F.3d at 329, and the sentencing factors they find are reviewed for clear error. *United States v. Taftsiou*, 144 F.3d 287, 293 (3d Cir. 1998). Here, the Court's calculation was correct. The base level was six, which Clark does not contest. The Court then added a seven-level enhancement for defrauding or attempting to defraud PNC of between $120,000 and $200,000. U.S.S.G. § 2F1.1(b)(1)(H). To apply this enhancement, the Court found that Clark had attempted to defraud PNC of $131,770.49, essentially accepting the Government's case on the PNC count in its entirety. This was not clearly erroneous, as the Government presented evidence that Clark purchased information on the accounts, authorized Hamilton to hire Myers to withdraw funds from those accounts, gave the purchased information to Hamilton for Troche and Myers to use to withdraw money, and then divided up the proceeds on all successful transactions when Hamilton brought the money back to him. On the basis of this evidence, the Court could certainly find that

12

Clark was involved in all 17 transactions, which added up to $131,770.49.

The Court also applied an enhancement of two levels for more than minimal planning. U.S.S.G. § 2F1.1(b)(2)(B). The evidence supported finding that Clark's scheme was quite complex, requiring him to line up a complicit teller, a middleman, and impostors.

The Court also applied a four-level enhancement for Clark's role as an organizer or leader. U.S.S.G. § 3B1.1(a). Again, the evidence supported the notion that this was Clark's scheme—that he was the one recruiting accomplices, arranging the details, and ultimately dividing up the money taken. Thus, the District Court properly calculated the Guidelines offense level as 19.

After calculating the Guidelines range, the District Court must give "meaningful consideration" to the § 3553(a) factors. *Cooper*, 437 F.3d at 329; *see also* 18 U.S.C. § 3553(a). While it might be preferable for district courts to consider explicitly each factor on the record, we have not required them to do so. *Id.* Rather, we have merely required that they consider meritorious factors brought to their attention by the parties. *Id.* Here, defense counsel raised four issues: (1) the length and condition of Clark's pre-trial detention, (2) his drug use, (3) the shorter sentences of some of his accomplices, and (4) the unreasonableness of enhancing his sentence a total of six levels for the complexity of the scheme and Clark's leadership role.

The record indicates that the Court gave each of these issues meaningful consideration. As to the pre-trial detention issue, the Court found that it needed do no more

than credit the time against Clark's ultimate sentence. It found no unreasonable delay and stated that no evidence of inhumane conditions was before it. As for Clark's drug use, the Court merely stated that it would consider the issue. It did not comment further, but we have no reason to doubt that the Court considered the issue as it stated it would. With respect to the shorter sentences of Clark's accomplices, the Court noted that Clark had a much higher criminal history level than they had, and so they were not similarly situated; moreover, Clark was the leader and thus deserving of a harsher sentence. On the complexity/leadership issue, the Court simply stated that it considered the issues distinct and deserving of independent enhancements. Clark led a complex scheme, and the Judge determined that his sentence should reflect that. In this case, the Court meaningfully considered every meritorious § 3553(a) issue brought to its attention. No more is required.

The ultimate result of this process—a sentence of 64 months' imprisonment—is reasonable. Clark's sentence reflects his leadership, the complexity of the scheme, the amount of money defrauded, and his lifelong pattern of criminal, fraudulent behavior. It is still, however, within the Guidelines range and well below the statutory maximum of 30 years. Thus we find the sentence reasonable.

* * * * *

We hold that Clark's conviction for bank fraud was proper, and his sentence of 64 months' imprisonment was reasonable. We therefore affirm both his conviction and sentence.

14