**UNITED STATES of America**

v.

**Carl JONES, Appellant.**

**No. 09–2009.**

United States Court of Appeals, Third Circuit.

Argued Nov. 2, 2010.

Opinion Filed Nov. 22, 2010.

Robert Epstein, Michael D. Raffaele, Sarah S. Gannett (Argued), James J. McHugh, Jr., David L. McColgin, Leigh M. Skipper, Defender Association of Philadelphia Federal Court Division, Philadelphia, PA for Appellant.

Michael L. Levy, Robert A. Zauzmer (Argued), Marianne Cox, Vicki J. Markovitz, Office of United States Attorney, Philadelphia, PA, for Appellee.

BEFORE: SCIRICA, STAPLETON and ROTH, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellant Carl Jones was tried and convicted of possession of a firearm by a convicted felon. Jones appeals two of the District Court's rulings, arguing that it abused its discretion in: (1) denying the *Batson* challenge he raised during *voir dire* of the jury; and (2) repeating the law on the defense of necessity when instructing the jury.[1] We will affirm.

---

1. Solely to preserve the issues for Supreme Court review, Jones raises two other matters on which we have previously ruled: (1) the District Court erred in not instructing the jury that it had the power to be the arbiter of the law as well as the facts; and (2) 18 U.S.C. § 922(g)(1) is unconstitutional because it does not regulate an activity that substantially af-

## I. Background

Jones was arrested following an altercation at a fraternity party on the campus of Temple University on September 18, 2005. He was indicted, tried, and convicted under 28 U.S.C. § 921(g)(1), the "felon in possession" statute. During *voir dire*, Jones raised a *Batson* challenge after the prosecution struck two African–American jurors and seated three out of a possible five African–American jurors in the venire pool. The prosecutor used her other four peremptory challenges to strike four white jurors. Without finding that Jones had established a *prima facie* case under the framework established under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the District Court asked the prosecutor "for the sake of argument" to state her reasons for striking the two black jurors. With respect to Juror No. 22, the prosecutor stated that she exercised the strike because (i) the juror had been laid off by the city and might unfairly judge city employees, and (ii) the juror had her eyes closed at times during voir dire and may not have been paying attention. With respect to Juror No. 30, the prosecutor stated that the juror's eyes looked bloodshot, and that he appeared to be looking down, nodding off, and not engaged at times.

When Jones' counsel disputed that either juror had failed to pay attention, or that Juror No. 30's eyes appeared bloodshot, the District Court responded:

> If I thought that there was a juror on this panel who wasn't paying attention, I guarantee you, I would have done so, and command [sic] that juror's attention.

This is her perception.... I am telling you that factually, based upon the record in front of this man right now, this Judge, I don't agree with her assessments, but since we're speaking for the record as well, the record should note that I am an African–American Judge.... The record should note that I have been in the courtroom since the mid '70s, and I am highly sensitive to motivations of people, and highly sensitive to their behaviors in my courtroom, because I expect justice I am finding as a fact right now, and for the rest of all time, that her motivation is not racially-motivated. The basis is that she—she exercised the strikes unwisely, period.

App. at 350–51.

Following trial, on November 21, 2008, the judge instructed the jury, *inter alia*, on the defense of justification. In addition to discussing the elements of the defense detailed in the model instructions which this Court has approved, the District Court instructed the jury that the defendant could possess the firearm no longer than absolutely necessary, that Congress wrote § 922 in absolute terms banning all felons from possessing firearms, and that the factual circumstances under which a convicted felon can possess a firearm are quite limited. After deliberating for approximately two hours, the jury sent out a note asking "when is it acceptable for a convicted felon to be in possession of a firearm? For example, didn't keep the gun longer than necessary." App. at 670. In response to the jury's question, the judge repeated the elements of a justifica-

fects interstate commerce. Jones recognizes that we have ruled that "jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role." *United States v. Boone*, 458 F.3d 321, 329 (3d cir.2006). Far from erring in failing to instruct a jury in jury nullification, the District

Court has the authority to remove a juror engaging in jury nullification. *See United States v. Kemp*, 500 F.3d 257, 303 (3d Cir. 2007). Jones also recognizes that we rejected his argument on the constitutionality of § 922(g)(1) in *United States v. Singletary*, 268 F.3d 196 (3d Cir.2001).

tion defense paraphrased from the model instructions. He then went on to explain the narrowness of its application, and the requirement that the felon should surrender the firearm as soon as he safely can and not possess the firearm any longer than absolutely necessary. Both before and after the instructions were given, Jones' counsel objected to the inclusion of the "no longer than absolutely necessary" language and to references to the intent of Congress. He argued that the Court should limit the instructions to the model language. The District Court responded that he habitually paraphrases jury instructions so that the jury can understand them more easily, and that he is obligated to clarify points when the jury asks a question to ensure that the jurors understand.

The jury deliberated for approximately two more hours and returned a guilty verdict. The District Court sentenced Jones to a term of imprisonment of 300 months, and Jones filed this timely appeal.[2]

## II.

■ The Supreme Court outlined the framework for a trial court to use in adjudicating a *Batson* claim as follows:

First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race [; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis *for striking the juror in question* [; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana,* 552 U.S. 472, 476–77, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (internal citation omitted).

The question of whether a *prima facie* case has been established "becomes moot, and thus need not even be addressed, when the prosecutor provides explanations for the strikes." *Holloway v. Horn,* 355 F.3d 707, 723 (3d Cir.2004). Thus, the issue of a *prima facie* case is moot here.

■ A prosecutor meets her burden of production by offering non-race-based reasons for her strikes that do not violate equal protection. *Purkett v. Elem,* 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Once the prosecutor states race neutral reasons for her strikes, the inquiry then proceeds to step three, where the trial court determines whether the defendant has carried his burden of showing that the prosecutor was motivated by discriminatory intent. *Id.*; *Batson,* 476 U.S. at 98, 106 S.Ct. 1712. A court must consider "all of the circumstances that bear upon the issue of racial animosity," *Snyder,* 552 U.S. at 478, 128 S.Ct. 1203 and should look to the "totality of the relevant facts" when determining whether impermissible racial discrimination motivated the prosecutor's strikes. *Hernandez v. New York,* 500 U.S. 352, 363, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). "[A] trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder,* 552 U.S. at 477, 128 S.Ct. 1203. The demeanor of the attorney exercising the challenge will often be the best evidence of discriminatory intent, and, because "determinations of credibility and demeanor lie 'peculiarly within a trial judge's province,' " an appellate court, absent exceptional circumstances, should defer to a trial court's judgment about the

---

**2.** The District Court had federal question jurisdiction over this action under 29 U.S.C. § 921(g)(1). We have appellate jurisdiction over the District Court's final order under 28 U.S.C. § 1291.

credibility of the attorney who exercises a peremptory challenge. *Id.*

Jones' brief summarizes his challenge to the District Court's exercise of its *Batson* responsibilities as follows:

> [W]here the district court rejects the prosecutor's proffered reasons as false, it may not speculate as to legitimate, unstated, race-neutral reasons for the prosecutor's use of her peremptory strikes and deny the *Batson* challenge on the basis of those presumed reasons.
>
>     \*     \*     \*
>
> The district court [has] found that [the] proffered reasons were false. But then, instead of weighing the evidentiary value of the government's statement of obviously pretextual reasons for the strikes, the district court considered as evidence that the strikes were not racially motivated its own speculation that the prosecutor had unspoken, race-neutral reasons for making the challenged strikes. Because this Court has repeatedly held that such speculation is improper, the district court failed to conduct the proper inquiry into whether the government's use of peremptory strikes was racially motivated and done in violation of Mr. Jones's Fifth Amendment rights.

Appellant's Br. at 22, 29.

We find that Jones is wrong on his facts. As we read the record, the District Court did not find the prosecutor's proffered explanations to be "false" or "pretextual" and did not "speculate" about other possible race neutral explanations. Rather, the District Court found as a fact that the prosecutor's challenges resulted from what the Court believed to be misperceptions of the prosecutor with respect to the demeanor and conduct of the two jurors. While those challenges were "unwise" in the sense that they could have been better used, the Court concluded that what was in the mind of the prosecutor were misperceptions and that those misperceptions had nothing to do with racial animus. Accordingly, there was no need to speculate about other possible race neutral motives.

In short, the District Court evaluated the proffered explanation of the challenges and while it disagreed with the prosecutor's evaluation of the situation, it declined to draw the inference that they were pretexts for racial animus. To the extent Jones contends that the District Court was not entitled to decline to draw that inference, he is wrong. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (disbelief in proffered reasons does not compel finding of intentional discrimination).

Nor can we fault the District Court for going on to affirmatively and expressly find that the prosecutor's challenges were not motivated by racial animus. As we have noted, Jones had the burden of proving racial animus, and the record contained no substantial evidence of the same once it was determined that the prosecutor's explanations were not pretextual.[3]

Here, the District Court determined, from its "peculiar" vantage point of firsthand observation, that it disagreed with the prosecutor's perceptions and that the prosecutor had exercised her strikes unwisely, but that the strikes were not racially motivated. This Court should only overturn a trial court's determination of no

---

3. There is, for example, no evidence of strikes of minority jurors for reasons that apply equally to seated or accepted white jurors, statistical patterns of strikes against one racial group, patterns of variances in voir dire questions and jury shuffling directed at racial groups in the same venire pool, or historic patterns of a prosecutor's office use of racial strikes to keep minorities from the jury panel.

purposeful discrimination if it is left with a "definite and firm conviction that a mistake ha[d] been committed." *Hernandez*, 500 U.S. at 369, 111 S.Ct. 1859 (internal citation omitted). Having reviewed the record, we are not left with such a conviction.[4]

## III.

■ Jones argues that the District Court should have limited its instruction on the defense of justification to the language in the model instructions and should not have included additional language that a convicted felon cannot possess a firearm any longer than "absolutely necessary." Jones maintains that the Court's instruction that a convicted felon could possess a firearm no longer than absolutely necessary was itself "unnecessary," and that the District Court compounded this alleged error through "undue repetition of the unnecessary instruction." Appellant's Br. at 44. He contends that this "undue repetition" coupled with the Court's discussion of the legislative intent behind § 922(g) served "to lead the jury to the impression that the defense of justification is unlikely to apply except in the rarest of circumstances-and, by extension, not in the case at bar." *Id.* at 51.

Where the District Court accurately states the law, we review for abuse of discretion. *United States v. Hoffecker*, 530 F.3d 137, 173–74 (3d Cir.2008) ("We exercise plenary review to determine whether jury instructions misstated the applicable law, but in the absence of a misstatement we review for an abuse of discretion.") (citation omitted). Here, the District Court accurately explained the law when charging the jury and correctly emphasized the narrowness of the necessity defense. It did not repeat the jury instruction an inordinate number of times. It spent a comparable amount of time explaining the government's burden to prove knowing possession of a firearm beyond a reasonable doubt, and in explaining the preponderance standard for the defendant's burden of proof.

The Court then had to repeat the justification instruction when the jury, after deliberating for two hours, asked for clarification of the justification defense and specifically about the length of time a convicted felon could possess a firearm. At that point, the District Court repeated the instruction and paraphrased the law behind the instruction, as he had done when he first instructed the jury. We cannot say that the District Court abused its discretion when it correctly characterized the law and did not repeat the instruction needlessly.

## IV.

The judgment of the District Court will be affirmed.

---

4. Contrary to Jones' suggestion, *Coombs v. Diguglielmo*, 616 F.3d 255 (3d Cir.2010), is readily distinguishable from the case before us. We there found reversible error because the District Court had effectively omitted the third step of the *Batson* inquiry by (1) unreasonably limiting the defendant's opportunity to prove pretext, (2) failing to address whether the prosecutor's explanation was pretextu- al, and (3) not making an express finding on the ultimate issue of whether racial animus played a role in the strikes. To the extent Jones urged at oral argument that *Coombs* required more engagement by the District Court with the evidence, we stress that this record contains no evidence reasonable doubt, and in explaining the preponderance standard for the defendant's burden of proof.