# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 3, 2020        Decided July 24, 2020

No. 10-3037

UNITED STATES OF AMERICA,
APPELLEE

v.

LARRY WILKERSON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:00-cr-00157-15)

*Sebastian K.D. Graber*, appointed by the court, argued the cause for appellant. With him on the briefs was *Timothy Cone*, appointed by the court.

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, at the time the brief was submitted, and *Elizabeth Trosman* and *Suzanne Grealy Curt*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: In November 2000, a grand jury indicted appellant Larry Wilkerson and fifteen codefendants on 158 counts related to a violent narcotics-distribution conspiracy that operated in D.C. throughout the 1990s. Appellant was charged with conspiracy to distribute and possess with intent to distribute cocaine, cocaine base, heroin, and marijuana, conspiracy to participate in a racketeer-influenced corrupt organization, four counts of aiding and abetting first-degree murder, four corresponding counts of aiding and abetting a continuing criminal enterprise (CCE) murder, and one count of aiding and abetting first-degree felony murder.

Many of appellant's codefendants pled guilty and some also agreed to cooperate with the government. The rest went to trial in groups. "Group One" consisted of six defendants, including the conspiracy's leaders, Kevin Gray and Rodney Moore. That trial concerning the Gray-Moore conspiracy ended in guilty verdicts and substantial sentences, which this court affirmed in part and vacated in part in *United States v. Moore*, 651 F.3d 30 (D.C. Cir. 2011), *aff'd in part sub nom. Smith v. United States*, 568 U.S. 106 (2013). "Group Two" consisted of six more defendants and similarly resulted in guilty verdicts and lengthy sentences, which this court affirmed in part and reversed in part in *United States v. McGill*, 815 F.3d 846, 877 (D.C. Cir. 2016), *cert. denied*, 138 S. Ct. 58 (2017).

Appellant was tried separately from his codefendants. On September 22, 2004, a jury found appellant guilty on all counts except one count of aiding and abetting first-degree murder and a corresponding count of aiding and abetting CCE murder. On April 20, 2010, the district court sentenced appellant to life imprisonment.

Appellant now appeals. He raises a number of challenges, including to the district court's dismissal of a juror during deliberations and to the district court's rejection of his motion to dismiss the RICO conspiracy count as time-barred. We reject his challenges and affirm his convictions and sentence.

I.

We first consider the district court's dismissal of a juror who, after deliberations began, expressed her disagreement with the applicable law and her inability to apply it. Appellant contends that the district court's dismissal of the juror violated his Sixth-Amendment right to conviction by a unanimous jury. We conclude that the district court did not err.

A.

On September 8, 2004, after two months of trial, the jury began deliberations. *United States v. Wilkerson*, 656 F. Supp. 2d 1, 2 (D.D.C. 2009) ("*Wilkerson I*"). Three-and-a-half days into deliberations, the district judge received the following handwritten note from a juror:

> "I, juror number 0552, request that I be replaced with an alternate in the deliberation of Larry Wilkerson. I strongly disagree with the laws and instructions that govern this deliberation, and I cannot follow them. Because I feel so strongly about this, it may affect my decisions in this matter. In other words, a possible bias decision. In addition, I am experiencing emotional and mental distress. For this alone, I felt it was enough for me to ask for a replacement. I would not be asking for this request, if I didn't feel that this was a serious issue. Please take this request under strong consideration. I apologize, for the

delay in this request, but if it is at all possible please remove me from this deliberation.  Sincerely, Juror 0552.”

*Id.*

The district court decided to ask Juror 0552 about her note.  The following colloquy ensued:

COURT:  All right.  Thank you.  In your note I just want to review it with you and ask you a couple of questions about it.  And I cannot go into your deliberations or what’s going on in the jury room.  You understand that?  I don’t want to hear anything about the deliberations or intrude in any way, but because of your note I need to ask you a couple of questions. . . .  You said that you request to be replaced because you strongly disagree with the laws and instructions that govern this deliberation and you cannot follow them.  In other words, I just need to ask you when you make that statement you mean the instructions and the law that I’ve given to you in this case we’re talking about?
JUROR 0552:  Yes.
COURT:  And although you took an oath to follow the instructions and the law you feel you cannot do so; is that fair?
JUROR 0552:  Yes.
COURT:  And you were very fair about it.  You wrote I feel so strongly about this it may affect my decisions in this matter.  In other words, I may have possible bias decision.  And because you’re disagreeing with the law, is that what you’re saying?
JUROR 0552:  Yes.
COURT:  You also said you’re feeling emotional and mental distress.  You felt that alone was enough to ask for replacement.  Is that just because of deliberations you mean?  I don’t want to get --

JUROR 0552:  The whole thing.
COURT:  The whole case?
JUROR 0552:  The whole case.
COURT:  Let me ask you about the law.  You've read the instructions.  You've heard my law [sic] we're talking about.  And it's your opinion you cannot follow the law and apply it in this case?  Is that what you're saying?
JUROR 0552:  I cannot follow it because I do not agree with it.
COURT:  You do not agree with the law?
JUROR 0552:  No.
COURT:  I don't want to get in your deliberations now.
JUROR 0552:  Okay.
COURT:  You just don't agree with the law?
JUROR 0552:  Uh-uh.
COURT:  And you came to this belief after seriously considering you say here that you didn't, you know, you wouldn't ask for this but you didn't feel you felt it was such a serious issue?
JUROR 0552:  It is serious.  We're dealing with somebody's life.
COURT:  And under the law that I've given you you disagree with that?  Is that what you're saying?
JUROR 0552:  Yes.

*Id.* at 3.

After some further discussion with counsel, the district court decided to dismiss Juror 0552. *Id.* Based on Juror 0552's note, the above colloquy with her, the brevity of the jury's deliberations relative to the length and complexity of the trial, and the lack of any substantive jury questions, the district court found as a matter of fact that Juror 0552 sought to be dismissed because she disagreed with the applicable law rather than

because of any concerns about the evidence.  Trial Tr. 36–38, Sept. 15, 2004, 8 J.A. 2551–53.

Instead of proceeding with eleven jurors, the district court replaced Juror 0552 with an alternate.  *Wilkerson I*, 656 F. Supp. 2d at 4 n.3.  On September 22, 2004, the reconstituted jury returned guilty verdicts on all counts except one first-degree-murder count and an associated CCE murder count. Appellant moved for a new trial, arguing that the district court had violated his Sixth-Amendment rights by dismissing Juror 0552.  The district court denied the motion.  *Id.* at 10–11.

## B.

Appellant renews his contention that the dismissal of Juror 0552 violated his Sixth-Amendment rights.  Appellant challenges both the district court's finding that Juror 0552's concerns were with the law, not the evidence, and the district court's conclusion that disagreement with the law is a valid ground for dismissal.  We disagree with both challenges.  We hold that intent to disregard the law constitutes a valid ground for dismissing a juror and that the district court permissibly dismissed Juror 0552 on that basis.

## 1.

Federal Rule of Criminal Procedure 23(b) authorizes dismissal of a juror during deliberations for "good cause."  Fed. R. Crim. P. 23(b)(3).  "A variety of issues" can constitute "good cause" to excuse a juror, "including illness, family emergency, or, . . . jury misconduct."  *United States v. McGill*, 815 F.3d 846, 866 (D.C. Cir. 2016) (internal quotation marks omitted).  "[A]ction by jurors that is contrary to their responsibilities" can constitute good cause.  *Id.* (internal quotation marks omitted).

Because a district court, "based on its unique perspective at the scene, is in a far superior position than [a court of appeals] to appropriately consider allegations of juror misconduct," we review a district court's dismissal of a juror "only for an abuse of discretion." *Id.* at 867 (quoting *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006). The Sixth Amendment, however, constrains that discretion. *Id.* This case presents a question we have previously left open: whether the Sixth Amendment precludes dismissing a juror "for refusing to apply the relevant substantive law." *United States v. Brown*, 823 F.2d 591, 597 (D.C. Cir. 1987). We now answer that question in the negative: the Sixth Amendment does not afford a defendant the right to a juror who is determined to disregard the law.

We have already decided as much with regard to trial proceedings that come before jury deliberations. In particular, we have held that the Sixth Amendment provides no right to a jury instruction on nullification. *United States v. Dougherty*, 473 F.2d 1113, 1130–37 (D.C. Cir. 1972). As we later explained, a "jury has no more '*right*' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty.'" *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983). Rather, "it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." *Sparf v. United States*, 156 U.S. 51, 102 (1895). Were it otherwise, juries would "become a law unto themselves," such that "our government [would] cease to be a government of laws, and [would] become a government of men." *Id.* at 101, 103. For the same reasons, a juror intent on disregarding the law may be dismissed for cause during voir dire. *See, e.g.*, *Adams v. Texas*, 448 U.S. 38, 45 (1980).

The Sixth Amendment provides no more right to a juror determined to disregard the law during deliberations than it does beforehand. The Second Circuit thus has "categorically reject[ed] the idea that, in a society committed to the rule of law, . . . courts may permit [jury nullification of the law] to occur when it is within their authority to prevent." *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997). The court reasoned that, "[i]nasmuch as no juror has a right to engage in nullification" of the applicable law, district courts "have the duty to forestall or prevent such conduct" if it can be done without "interfer[ing] with guaranteed rights or the need to protect the secrecy of jury deliberations." *Id.* at 616. The Third, Ninth, and Eleventh Circuits agree, and we are aware of no court of appeals to conclude otherwise. *See United States v. Fattah*, 914 F.3d 112, 149 (3d Cir. 2019); *United States v. Christensen*, 828 F.3d 763, 806 (9th Cir. 2015); *United States v. Oscar*, 877 F.3d 1270, 1287 (11th Cir. 2017). We join our sister circuits' unanimous view.

It is true, as we have recognized, that juries might sometimes "abuse their power and return verdicts contrary to the law and instructions of the court." *Washington*, 705 F.2d at 494. But "[s]uch verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." *Id.* The Sixth Amendment provides a defendant no right to such an outcome. On the contrary, when a juror's intent to disregard the law comes to the attention of the court, "it would be a dereliction of duty for a judge to remain indifferent." *Thomas*, 116 F.3d at 616. Consequently, we hold that dismissal of a juror during deliberations for intent to disregard the law does not violate a defendant's Sixth-Amendment rights.

9

2.

While intent to disregard the applicable law constitutes a valid basis for dismissal, "a court may not dismiss a juror during deliberations if the request for discharge stems from doubts the juror harbors about the sufficiency of the government's evidence." *Brown*, 823 F.2d at 596. If it were otherwise, "the government [could] obtain a conviction even though a member of the jury . . . thought that the government had failed to prove its case," rendering a defendant's Sixth-Amendment right to a unanimous verdict "illusory." *Id.*; *accord Thomas*, 116 F.3d at 621. A court thus might face the "often difficult distinction between the juror who favors acquittal because he is purposefully disregarding the court's instructions on the law, and the juror who is simply unpersuaded by the Government's evidence." *Thomas*, 116 F.3d at 621. "[A]n effort to act in good faith may easily be mistaken" for "purposeful disregard of the law." *Id.* at 618.

Moreover, an effort by the court to clarify whether a juror intends to disregard the law or simply finds the evidence unpersuasive runs the risk of "intrud[ing] on the secrecy of the jury's deliberations." *Brown*, 823 F.2d at 596. Navigating the tension between the "duty to dismiss jurors for misconduct" and the "equally, if not more, important [duty to] safeguard[] the secrecy of jury deliberations" is a "delicate and complex task." *Thomas*, 116 F.3d at 618. "[A] court may not delve deeply into a juror's motivations because [doing so may] intrude on the secrecy of the jury's deliberations." *Brown*, 823 F.2d at 596.

Cognizant of those competing considerations, this court in *Brown* decided to "err[] on the side of Sixth-Amendment caution." *McGill*, 815 F.3d at 867. We held that, "if the record evidence discloses any possibility that the request to discharge

stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request." *Brown*, 823 F.2d at 596. Applying that standard to the facts in *Brown*, we rejected the juror's dismissal because the record "indicate[d] a substantial possibility that [the juror] requested to be discharged because he believed that the evidence offered at trial was inadequate to support a conviction." *Id.* Several other circuits have since adopted our approach in *Brown. See, e.g.*, *United States v. Kemp*, 500 F.3d 257, 304 (3d Cir. 2007); *United States v. Abbell*, 271 F.3d 1286, 1302 (11th Cir. 2001); *United States v. Symington*, 195 F.3d 1080, 1087 (9th Cir. 1999); *Thomas*, 116 F.3d at 622.

The district court here applied the *Brown* standard, finding no substantial possibility that Juror 0552's request to be dismissed stemmed in any way from her views about "the sufficiency of the government's evidence." *Brown*, 823 F.2d at 596. Rather, the juror asked "to be replaced because she strongly disagrees with the law[s] that govern this deliberation and cannot follow them." Trial Tr. 37, Sept. 15, 2004, 8 J.A. 2552. When defense counsel suggested that the juror might have had evidence-based reservations about "the law applied to the facts," as opposed to concerns about the law alone, the court rejected that possibility: "Her note was very clear. She wants to be relieved of the duty because she disagree[s] with the law." *Id.* at 32, 8 J.A. 2547. And she so explained, the court found, "without any reference whatsoever to any evidentiary concerns or the strength of the government's evidence or the dissatisfaction with the government's presentation of the case." *Id.* at 38, 8 J.A. 2553. Instead, "her only expression [was] that she cannot follow the law and she disagrees with it and she reaffirmed that orally." *Id.* The court was "satisfied beyond a reasonable doubt as a judge of her credibility from her statements in the letter and her statements on the record that she will not follow the law[s], that she

strongly disagrees with them and she'll not follow them contrary to her oath of office." *Id.* The court thus found no substantial possibility of an evidence-based concern. *Id.*

We see no basis to set aside the district court's finding to that effect. As the court explained, when Juror 0552 sent her note, the jury had yet to submit any substantive questions and had been deliberating for only three days, after a months-long trial involving an extensive amount of evidence covering numerous counts and a correspondingly complex set of instructions and verdict form. That context, the court understandably believed, was not suggestive of a hold-out juror based on the evidence. And more importantly, the juror's statements did not indicate any evidentiary concerns. As the court explained, her note stated unambiguously that she disagreed with the law without referencing any evidentiary concerns. In response to the court's questioning, she confirmed that she disagreed with the law seven times, never once referencing the evidence, much less suggesting any evidence-based concerns.

To be sure, in her note, Juror 0552 conveyed that "[i]n addition" to her disagreement with the law, she was "experiencing emotional and mental distress." *Wilkerson I*, 656 F. Supp. 2d at 2. When the district court asked whether her distress was "because of deliberations," she replied that it was "the whole thing," i.e., "the whole case." *Id.* at 3. Appellant asserts that the whole case includes the evidence. But Juror 0552's statement that her emotional distress related to "the whole thing" does not evince an evidentiary concern as such—i.e., it did not amount to "record evidence disclos[ing] a possibility that [she] believe[d] that the government ha[d] failed to present sufficient evidence to support a conviction." *Brown*, 823 F.2d at 597. The district court understood her distress to stem from "concern[s] there was a lot at stake and

she said a life at stake," not from any concerns associated with the evidence. Trial Tr. 38, Sept. 15, 2004, 8 J.A. 2553. On that record, the court did not err in discerning no substantial possibility that her distress derived from an evidentiary concern. (After the trial, it became apparent that the juror had "fallen for" and become "fixated" with appellant, and she visited him in jail some fifty times. *United States v. Wilkerson*, 656 F Supp. 2d 11, 16–17 (D.D.C. 2009) ("*Wilkerson II*")).

The contrast between the record in this case and the one in *Brown* is instructive. In *Brown*, the jury had been deliberating for five weeks when it sent the following note: "When is a defendant not guilty? When all jurors give a unanimous verdict vote of not guilty or, at least, one gives a vote of not guilty?" *Brown*, 823 F.2d at 594. The district court instructed the jury to continue deliberations to reach a unanimous verdict. *Id.* Later that day, the court received another note, reading: "I Bernard Spriggs am not able to discharge my duties as a member of this jury." *Id.* When the court questioned Spriggs, he indicated that he had concerns with "the way [the act is] written *and* the way the evidence has been presented," and that, had "the evidence [been] presented in a fashion in which the law is written, then, maybe, [he] would be able to discharge [his] duties." *Id.* at 597 (emphasis in original). We held that Spriggs's dismissal violated the defendants' right to conviction by a unanimous jury, reasoning that we could not conclude "with any conviction" that Spriggs's request "stemmed from something *other* than this view" of the evidence. *Id.* (emphasis in original). Because the "record evidence in th[e] case indicate[d] a substantial possibility" that Spriggs's request stemmed from evidentiary doubts, his dismissal violated the defendants' Sixth-Amendment rights. *Id.* at 596.

The record in this case is markedly different. First, in *Brown*, Spriggs's note came five weeks into deliberations and

on the same day the court instructed the jury to keep deliberating after the jury asked whether it had to be unanimous. *Id.* at 594. That context suggested that Spriggs may have been a holdout. By contrast, Juror 0552's note came only three days after a two months-long trial covering many crimes over many years and the jury had yet to send a single substantive note. Second, in *Brown*, when asked about his disagreement with the law, Spriggs referenced his dissatisfaction with the evidence and even indicated that he would have had no problem if the evidence had been presented differently. *Id.* at 597. By contrast, Juror 0552 unambiguously indicated her disagreement with the law in her note without any reference to evidentiary concerns, and then confirmed that disagreement seven times in her colloquy with the district court without once mentioning evidentiary issues. In the context of that record, the district court was under no obligation to keep her on the jury even though she repeatedly and unequivocally stated that she strongly disagreed with the applicable law and could not follow it.

Lastly, we note an issue appellant raised in the district court. In *Brown*, as noted, we held that a juror cannot be dismissed if "the record evidence discloses any possibility"—or, alternatively, "a" possibility—"that the request to discharge stems from the juror's view of the sufficiency of the government's evidence." 823 F.2d at 596–97. And then in applying that standard, we said that the "record evidence in th[e] case indicate[d] a substantial possibility" that the juror "believed that the evidence offered at trial was inadequate to support a conviction." *Id.* at 596. The district court in this case, echoing that language, found that the record here indicated no such "substantial possibility." Trial Tr. 38, Sept. 15, 2004, 8 J.A. 2553. But the language in *Brown* might raise the question, does our standard call for denying a juror's dismissal when there is "any" or "a" possibility of an evidence-based

concern or instead only when there is a "substantial" such possibility, insofar as there is a meaningful difference among those formulations?

Appellant raised that issue in the district court in his motion for a new trial. *Wilkerson I*, 656 F. Supp. 2d at 6–8. The district court understood *Brown* to call for examining whether there is a "tangible possibility" as opposed to "just a speculative hope." *Id.* at 7 (quoting *Abbell*, 271 F.3d at 1302 n.14); *accord Kemp*, 500 F.3d at 304; *Symington*, 195 F.3d at 1087 n.5. The court found no such possibility indicated by the record in this case. *Wilkerson I*, 656 F. Supp. 2d at 8. The court further said that it "would be helpful for the Court of Appeals to clarify the applicable standard in this Circuit." *Id.*

We do so now, and we agree with the district court that the pertinent question is whether there is a "tangible" or "appreciable" possibility, not merely whether there is "literal[ly] 'any possibility,'" even just a theoretical one. *Id.* That understanding follows naturally from our repeated recognition in *Brown* that the possibility of a juror's evidence-based concerns must be one that "the record evidence discloses." 823 F.3d at 596–97. Here, the district court made the requisite determination: that "the record before [it] indicated no appreciable possibility that Juror 0552 harbored concerns about the evidence." *Wilkerson I*, 656 F. Supp. 2d at 5 n.5. We see no basis to reject the court's assessment.

II.

We next address appellant's claim that the district court erred in not dismissing the RICO conspiracy count against him as time-barred. We hold that the RICO conspiracy count was not time-barred.

15

A.

The statute of limitations applicable to RICO conspiracy is five years. *Smith v. United States*, 568 U.S. 106, 111 n.4 (2013). Here, because the grand jury indicted appellant on November 17, 2000, the cutoff for statute of limitations purposes was November 17, 1995.

The original November 2000 indictment alleged sixty-three racketeering acts in support of the RICO conspiracy count, including many after 1995. The indictment alleged appellant's specific involvement, however, in only seven predicate acts, one of which—narcotics conspiracy—the indictment alleged he committed after 1995.

In November 2002, the government filed a retyped indictment, which was largely the same as the original indictment but with some predicate racketeering acts that had been dismissed removed. In June 2003, appellant moved to dismiss the RICO conspiracy count from that indictment as time-barred. The district court denied appellant's motion.

While that motion was pending, in July 2003, the district court severed appellant's trial from that of his codefendants. Accordingly, prior to trial, in July 2004, the government filed a second retyped indictment, deleting predicate racketeering acts that did not specifically reference appellant. The second retyped indictment's RICO conspiracy count thus alleged seven predicate acts of racketeering, only one of which—narcotics conspiracy—appellant allegedly committed after 1995. The verdict form submitted to the jury also referenced only those seven predicate acts.

B.

Appellant contends that narcotics conspiracy does not constitute a predicate act of racketeering, and that even if it does, RICO conspiracy requires two predicate acts of racketeering within the statute of limitations period. We disagree on both scores.

In general, we review the district court's legal conclusion concerning the scope of the conspiracy de novo. *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001). But when a defendant fails to object to an alleged error, the defendant bears the burden of demonstrating "plain error" on appeal. *United States v. Moore*, 651 F.3d 30, 50 (D.C. Cir. 2011). Although the government contends that the plain-error standard applies here, we need not decide that issue because we conclude that the district court did not err in the first place. We hold that narcotics conspiracy constitutes a predicate act of racketeering and that a RICO conspiracy count is timely if the government charges the defendant within five years of the conspiracy's termination or the defendant's withdrawal.

A person commits the offense of RICO conspiracy by conspiring to "conduct or participate . . . in the conduct of [an interstate] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c)–(d). Section 1961 lists offenses that constitute racketeering activity, including "any offense involving . . . the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance . . . punishable under any law of the United States." *Id.* § 1961(1)(D). Here, both the first and second retyped indictments charged appellant with conspiracy to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *See* 21 U.S.C. §§ 841(a)(1), 846.

By its plain terms, section 1961(1)(D)'s language—"any offense involving . . . dealing in a controlled substance"—encompasses a Section 846 offense—conspiracy to "distribute, or dispense . . . a controlled substance." The structure of section 1961 bolsters that conclusion: section 1961's "subsections (B) and (C) . . . conspicuously lack the broad 'any offense involving' language of subsection (D)," instead limiting their predicate acts to those "indictable under specifically enumerated sections of the criminal code." *United States v. Weisman*, 624 F.2d 1118, 1124 (2d Cir. 1980). Several circuits have thus held that section 1961(1)(D) encompasses related conspiracy offenses. *See United States v. Echeverri*, 854 F.2d 638, 648–49 (3d Cir. 1988); *United States v. Phillips*, 664 F.2d 971, 1015 (5th Cir. 1981); *Weisman*, 624 F.2d at 1124. We agree and now hold that a narcotics conspiracy offense constitutes racketeering activity under section 1961(1)(D).

Appellant argues in the alternative that, even if narcotics conspiracy constitutes a predicate act of racketeering, the RICO conspiracy count was time-barred because it alleged his specific involvement in only one rather than two predicate acts within the limitations period. We disagree.

The statute of limitations applicable to RICO conspiracy bars prosecution unless an indictment is returned "within five years next after such offense shall have been committed." 18 U.S.C. § 3282. Thus, the statute of limitations begins to run when a defendant last commits the "offense" of RICO conspiracy. A defendant who conspires to participate in an enterprise's affairs "through a pattern of racketeering activity," 18 U.S.C. § 1962(c)—i.e., through commission of at least two predicate acts of racketeering, *id.* § 1961(5)—commits the offense of RICO conspiracy, *id.* § 1962(d). As the Supreme

Court has explained, however, "the offense in . . . conspiracy prosecutions [is] not the initial act of agreement, but the banding-together against the law effected by that act." *Smith*, 568 U.S. at 113. That offense "continues until termination of the conspiracy or, as to a particular defendant, until that defendant's withdrawal." *Id.* Put simply, "a defendant who has joined a conspiracy continues to violate the law through every moment of [the conspiracy's] existence." *Id.* at 111 (citation omitted).

Absent withdrawal, then, a defendant continues to commit the offense of RICO conspiracy until the date of the conspiracy's termination. It follows that a RICO conspiracy count is timely as long as the government charges the defendant within five years of that date. *See United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005); *United States v. Gonzalez*, 921 F.2d 1530, 1547–48 (11th Cir. 1991); *United States v. Torres Lopez*, 851 F.2d 520, 525 (1st Cir. 1988); *United States v. Persico*, 832 F.2d 705, 713–14 (2d Cir. 1987).

Here, as noted, both the first and second retyped indictments alleged appellant's participation in a narcotics conspiracy as a predicate racketeering act within the limitations period. Thus, both indictments alleged appellant's commission of the offense of RICO conspiracy within the limitations period.

III.

Appellant raises five additional challenges. He contends (i) that certain statements made by witnesses and the prosecution deprived him of a fair trial; (ii) that the district court improperly gave a *Pinkerton* instruction; (iii) that the evidence for two of the CCE murder counts was insufficient; (iv) that the prosecution withheld *Brady* evidence and

19

advanced inconsistent theories of prosecution; and (v) that the testimony of a witness named Donney Alston was secured in violation of Alston's Fifth Amendment rights. None of those challenges has merit.

Appellant first contends that certain statements made by witnesses and referenced in the prosecution's closing argument deprived him of a fair trial. Appellant particularly emphasizes one statement that suggested that his decision to go to trial proved his continuing participation in the conspiracy. Appellant objected to that testimony and requested the district court to strike it, which the court did. Appellant did not object to the prosecution's reference to that testimony in closing argument. Because appellant failed to preserve any claim for relief beyond striking the testimony, *see United States v. Tate*, 630 F.3d 194, 197 (D.C. Cir. 2011); *United States v. Taylor*, 514 F.3d 1092, 1095–96 (10th Cir. 2008), we review his claim for plain error, *Moore*, 651 F.3d at 50.

He cannot meet that standard. It is neither "clear" nor "obvious" that the district court should have sua sponte granted curative action beyond striking the challenged testimony. *United States v. Olano*, 507 U.S. 725, 734 (1993). Nor did the court's failure to sua sponte instruct the jury again or take other curative action following the prosecution's single reference thereto affect appellant's substantial rights, given the court's previous instruction and the weight of the evidence of appellant's continuing participation in the conspiracy and the comparative dearth of evidence of his purported withdrawal. *See McGill*, 815 F.3d at 890; *Moore*, 651 F.3d at 54.

Appellant next contends that, because of that testimony, the district court should have dismissed the narcotics conspiracy count, and that the court further erred in giving an instruction under *Pinkerton v. United States*, 320 U.S. 640

(1946), as to that conspiracy count and the RICO conspiracy count. But as discussed, the district court did not err in sending those conspiracy counts to the jury. And "once the trial court determined to send the conspiracy charge[s] to the jury, it could not have been error to also give a *Pinkerton* instruction." *United States v. Henning*, 286 F.3d 914, 920 (6th Cir. 2002).

Appellant challenges the sufficiency of the evidence for the CCE murders of Christopher Burton and Scott Downing. In particular, appellant challenges the sufficiency of the connection between those murders and the continuing criminal enterprise. Assuming such a substantive connection is required, *see, e.g.*, *United States v. Aguilar*, 585 F.3d 652, 658 (2d Cir. 2009), a "rational trier of fact could have found" it here, *United States v. Wahl,* 290 F.3d 370, 375 (D.C. Cir. 2002). A rational trier of fact could have found that members of the Gray-Moore conspiracy murdered Christopher Burton in retaliation for an attack on one of its own (appellant). Similarly, a rational trier of fact could have found that members of the conspiracy murdered Scott Downing as part of a botched plan to punish his partner for pulling out of a drug deal. Such murders, committed with the conspiracy's resources to stifle threats to its members or its deals, bear a substantive connection to the continuing criminal enterprise. *See United States v. Aquart*, 912 F.3d 1, 58 (2d Cir. 2018); *Aguilar*, 585 F.3d at 658; *United States v. Jones*, 101 F.3d 1263, 1267 (8th Cir. 1996).

Appellant next contends that the government withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and relied on inconsistent theories in its prosecutions in violation of his due-process rights. Both contentions rely on the same post-trial discovery: the factual proffer in Rodman Lee's plea agreement, which described Lee as the leader of a conspiracy counting Gray among its members. *United States*

*v. Wilkerson*, 656 F. Supp. 2d 22, 31 (D.D.C. 2009) ("*Wilkerson III*"). Appellant contends that that evidence was material to his claim that the Gray-Moore conspiracy had disbanded prior to 1995 and is inconsistent with the prosecution's theory that Lee joined the Gray-Moore conspiracy. Both contentions fail for the same reason: "[c]riminals may of course participate in more than one conspiracy." *Moore*, 651 F.3d at 65. Evidence that Gray participated in the Lee conspiracy is not inconsistent with the persistence of the Gray-Moore conspiracy. Such evidence is immaterial, as we held for the same factual proffer for several of appellant's original co-defendants, *id.*, and the prosecution's theories were not inconsistent, as the district court held, *Wilkerson III*, 656 F. Supp. 2d at 32–34.

Finally, Appellant contends that his indictment unlawfully relied on testimony from Donney Alston obtained in violation of Alston's Fifth Amendment privilege. But generally "a defendant does not have standing to complain of an erroneous ruling on the scope of the privilege of a witness." *Ellis v. United States*, 416 F.2d 791, 799 (D.C. Cir. 1969). Nor does any alleged violation of Alston's Fifth-Amendment rights fit the exception for cases in which a constitutional violation would otherwise evade review. *See id.* at 799–800; *accord Barrows v. Jackson*, 346 U.S. 249, 257 (1953).

\* \* \* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*