# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 10, 2021          Decided July 12, 2022

No. 19-3075

UNITED STATES OF AMERICA,
APPELLEE

v.

BRYNEE BAYLOR,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cr-00180-1)

*Shawn Sukumar* argued the cause for appellant. On the briefs was *David Benowitz.*

*Mark S. Determan*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for appellee. *Alexander P. Robbins*, Assistant U.S. Attorney, entered an appearance.

Before: SRINIVASAN, *Chief Judge*, PILLARD, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: Appellant Brynee Baylor was convicted of conspiracy to commit securities fraud, securities

fraud, and first-degree fraud for her participation in a fraudulent investment scheme. On appeal, she mounts a single challenge: the prosecution made improper comments during its rebuttal closing argument that substantially prejudiced her and denied her a fair trial. Baylor objected to most of the prosecution's statements in the district court, and the court sustained the objections. We find no reversible error in the district court's response to the prosecution's challenged statements, and we thus affirm Baylor's convictions.

I.

Beginning in 2010, Baylor, who was then a licensed attorney, joined forces with a Pennsylvania man to promote what they touted as a highly profitable trading program. They promised investors extraordinary returns in a short timeframe with false assurances about the venture's past successes. All told, they enticed more than a dozen individuals to deposit more than $2.4 million into Baylor's attorney trust account over the course of approximately one year.

Investors, however, never saw their money again. Baylor repurposed a majority of the deposited funds for her and others' personal use. She did so notwithstanding her repeated promises that the funds would remain secured in the trust account. Baylor continued that pattern—namely, recruiting investors with false promises and siphoning off their contributions for unrelated uses often just days after receipt—long into the scheme's course, even as she exchanged scores of communications with unhappy investors attempting (unsuccessfully) to recoup their money, and even though investors had been paid nothing at all.

On October 6, 2016, a federal grand jury indicted Baylor on charges stemming from her participation in the investment

scheme. Over the course of an eleven-day jury trial, the prosecution offered testimony from two government agents and ten former investors tending to show that Baylor knowingly engaged in a prolonged effort to defraud investors.

Baylor's defense involved an effort to demonstrate that she lacked awareness of the fraudulent nature of the enterprise. She attempted to point the finger at her business partner, whom she claimed had masterminded the scheme and had duped her along with the investors. As one component of her defense, Baylor introduced a joint stipulation of fact concerning testimony her mother had previously provided in a related civil proceeding. The stipulation, which defense counsel read to the jury, stated that Baylor's mother testified both that she "decided to invest" in the trading program and that she gave Baylor a check "expecting her to" deposit $15,000 for purposes of that investment. Apr. 18, 2019 P.M. Trial Tr. 24:7–22, App. 366. According to Baylor, the fact that her own mother invested in the scheme served to reinforce Baylor's lack of a culpable mental state at the time of the alleged offenses.

Although the vast majority of trial testimony focused on other issues, the prosecution briefly cross-examined Baylor about her mother's purported investment. The prosecution then suggested during closing argument that Baylor's mother in fact had not invested in the scheme at all. Defense counsel responded in closing arguments that the investment had occurred.

In the rebuttal closing argument, the prosecution then made four remarks on which Baylor grounds her challenge in this appeal: (i) "Now, certainly, [Baylor's mother] was trying to help her daughter get out of the trouble with the SEC" when she testified about the investment and she and Baylor "came up with" the idea of the investment; (ii) "Maybe [Baylor's mother]

wrote [the check] to help [Baylor] make some mortgage payment"; (iii) "It's possible [the check] was to pay some other household expense"; and (iv) The jury "should not credit" the "self-serving" investment claim, which came "only after" Baylor faced legal jeopardy. Apr. 25, 2019 Trial Tr. 14:7–16:17, App. 425–27.

Defense counsel objected to the first three statements when each was made (but not the fourth). The district court sustained each of those objections. The court expressly struck the first statement from the record, observing that it was not "in evidence." *Id.* at 14:13–14, App. 425. And the court stated that the second and third comments were speculative. The court sustained the objections and noted its grounds for doing so in the presence of the jury. Baylor did not ask for any additional relief, neither seeking a curative instruction nor moving for a mistrial.

On April 29, 2019, the jury found Baylor guilty of conspiracy to commit securities fraud, securities fraud, and five counts of first-degree fraud. She soon filed a motion for a new trial. Among her arguments, she pointed to the three assertedly improper statements to which she had objected during the prosecution's rebuttal argument.

The district court denied the motion for a new trial. *United States v. Baylor*, No. 16-cr-180, 2019 WL 3533529 (D.D.C. Aug. 2, 2019). With regard to Baylor's reliance on the prosecution's statements, the court reasoned that, although the statements were arguably improper, they had not misstated the evidence, inflamed the jury, or featured prominently at closing. The court added that it had sufficiently mitigated any prejudice from the statements in the jury's presence and that the case in any event was not close. The complained-of comments, the court determined, thus "could not reasonably have affected the

jury's verdict." *Id.* at *9 (brackets and citation omitted). Baylor now appeals.

## II.

Baylor raises only one argument in her appeal: that the prosecution's statements during its rebuttal closing argument denied her a fair trial. The threshold question we face is, which standard of review should govern our resolution of Baylor's claim? According to Baylor, we should apply harmless-error review. If so, the burden would lie with the government to show that the ostensible error was harmless—i.e., did not substantially and injuriously affect the jury's determination of the verdict. *See, e.g.*, *United States v. Johnson*, 231 F.3d 43, 47 (D.C. Cir. 2000).

Harmless-error review is inapplicable in the circumstances of this case. Harmless-error analysis generally applies when a district court erroneously *rejects* a defendant's timely claim of an error. *See, e.g.*, *United States v. Johnson*, 519 F.3d 478, 483 (D.C. Cir. 2008). In that situation, the government can prevail on appeal, notwithstanding the error in the conduct of the trial proceedings, by demonstrating that the error was harmless.

Here, though, the district court did not erroneously reject Baylor's claim of an error. Indeed, the court did not reject any relevant claim of error at all. Baylor's claim involves the four allegedly improper statements made by the prosecution in the rebuttal closing argument. But Baylor raised no objection in the district court to the fourth of those statements, so there was no claim of any error at trial as to that one. And while Baylor did object to the other three statements, the district court did not erroneously overrule her objections. Rather, the court *sustained* her objections, striking the first statement from the record and noting for the jury that the other two statements

were speculative. And Baylor made no argument at trial that the district court should have granted her additional relief beyond what it provided her upon sustaining her objections.

When, as here, a defendant "fail[s] to preserve any claim for relief beyond" what the court provided her, "we review [her] claim for plain error," not harmless error. *United States v. Wilkerson*, 966 F.3d 828, 840 (D.C. Cir. 2020); *see United States v. Taylor*, 514 F.3d 1092, 1095–97, 1099–1100 (10th Cir. 2008). And under plain-error review, unlike harmless-error review, the burden rests with the defendant, not the government. Specifically, Baylor must show that the district court (i) committed "error," (ii) that is "clear" or "obvious," (iii) that affects her "substantial rights," and (iv) that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 734–36 (1993) (alteration in original) (citations omitted).

It bears noting that Baylor could have obtained review of the district court's handling of the prosecution's allegedly improper statements under a more favorable standard than plain-error review—albeit still a standard under which Baylor (rather than the government) would bear the burden. Specifically, if Baylor sought review of the district court's denial of her new-trial motion based on the allegedly improper statements, we would review such a claim under an abuse-of-discretion standard rather than the plain-error standard. *United States v. Borda*, 848 F.3d 1044, 1060 (D.C. Cir. 2017). But Baylor expressly disclaims any challenge to that ruling, telling us that she is not "appealing the trial court's denial of her new trial motion." Baylor Reply Br. 2; *see also* Oral Arg. Tr. 5.

That choice has consequences, for nowhere other than Baylor's motion for a new trial did she seek and fail to obtain relief relating to the prosecution's statements. And because she

suffered no adverse ruling besides the court's new-trial decision—which she says she is not appealing—we are left to assess whether the district court's failure sua sponte to grant a mistrial or to take some other curative action in response to the prosecution's statements amounted to plain error. *See Wilkerson*, 966 F.3d at 840–41; *Taylor*, 514 F.3d at 1095–97, 1099.

Baylor cannot demonstrate plain error. The district court did not err, much less plainly err, in responding to the prosecution's challenged statements. That is, it "is neither 'clear' nor 'obvious' that the district court should have sua sponte granted curative action beyond" sustaining defense counsel's objections and instructing the jury as it did. *Wilkerson*, 966 F.3d at 840–41 (quoting *Olano*, 507 U.S. at 734). Baylor identifies no authority indicating otherwise.

Indeed, far from obvious error, the court's response to the prosecution's statements was fully proportionate to any prejudice they may have caused Baylor. In addition to sustaining the objections, the court stated in the presence of the jury that one of the assertions was not in evidence and deemed the other two comments speculative. Before closing arguments, moreover, the court twice instructed the jury that its own recollection of the trial evidence controlled and that "statements and arguments of the lawyers are not evidence." Apr. 24, 2019 A.M. Trial Tr. 35:10–37:11; *accord* Apr. 24, 2019 P.M. Trial Tr. 3:9–13. We generally presume that juries heed sustained objections and follow instructions to disregard prejudicial comments, *United States v. Wheeler*, 753 F.3d 200, 206 (D.C. Cir. 2014), and there is no reason to conclude that the jury did not do so here. The district court, then, did not plainly err by not sua sponte declaring a mistrial or taking additional curative action following the relevant remarks by the prosecution.

8

Lastly, even assuming the district court should have taken any additional actions, the court's failure to do so did not affect Baylor's substantial rights, given: the relatively innocuous nature of the prosecution's four isolated comments on an issue of comparatively minor focus; the remedial steps the court did undertake; and the considerable array of compelling evidence of Baylor's knowing participation in the fraudulent investment scheme. *See Wilkerson*, 966 F.3d at 841; *United States v. McGill*, 815 F.3d 846, 921–22 (D.C. Cir. 2016). That evidence, which spanned many days of testimony, included Baylor's repeated, false representations of prior successful transactions, her false assurances about the intended use of investors' deposits, and her false communications with investors concerning the status of their funds. *Baylor*, 2019 WL 3533529, at *2–3. In the end, as the district court observed, Baylor's case "was not close." *Id.* at *9.

\* \* \* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*